IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CAROL JEAN WOLFE

        Plaintiff,

v.                                                        Civil Action No. 3:14-cv-4

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On January 8, 2014, Carol Jean Wolfe filed this action under 42 U.S.C. §§ 405(g) for judicial review of an adverse decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-433.[1] The Commissioner filed her Answer on March 28, 2014.[2] Ms. Wolfe then filed her Motion for Summary Judgement on May 14, 2014,[3] and the Commissioner filed her Motion for Summary Judgement on June 9, 2014.[4] The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

    1. Ms. Wolfe's Motion for Summary Judgment and Memorandum in Support.

---

[1] Doc. 1.

[2] Doc. 6.

[3] Doc. 13.

[4] Doc. 14.

2. Commissioner's Motion for Summary Judgment and Memorandum in Support.

**C. Recommendation**

I recommend that:

1. Ms. Wolfe's Motion for Summary Judgment be **DENIED** because substantial evidence supports the Administrative Law Judge's credibility finding and residual functional capacity hypothetical given to the Vocational Expert.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

**A. Procedural History**

On February 23, 2011, Plaintiff applied for Title II disability insurance benefits alleging a disability beginning on March 31, 1998. R. 173. Plaintiff listed chronic obstructive pulmonary disease ("COPD"), anxiety, depression, heart problems, and osteoporosis as the physical and mental conditions that limit Plaintiff's ability to work. R. 195. The application for benefits was initially denied on March 25, 2011 and upon reconsideration on June 30, 2011. R. 104, 112. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 15, 2012. R. 30. Ms. Wolfe, who was represented by counsel, testified at the hearing, as did a Vocational Expert ("VE"). R. 37-60. On August 17, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from March 31, 1998, the alleged onset date, through March 31, 2004, the date last insured. R. 25. Plaintiff appealed this decision to the Appeal Council, which denied review on November 13, 2013. R. 5. Plaintiff then timely brought her claim to this Court.

**B. Personal History**

Plaintiff was born on February 20, 1955. R. 37. Plaintiff is married. R. 38. Plaintiff finished the twelfth grade and subsequently worked in a state hospital for seventeen years. *Id.*

**C. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Plaintiff was not under a disability during the period at issue.

On January 6, 2000, Plaintiff visited Marietta Memorial Hospital complaining of chest pain. R. 290. After a stress echo test, Plaintiff's assessment was "[a]bnormal stress echocardiogram consistent with atherosclerotic heart disease. *Id.* Plaintiff also underwent a stress ochocardiogram on January 6, 2000, which "induced hypokinesia of the anterior wall compatible anterior wall ischemia." R. 369. On January 10, 2000, Plaintiff was prescribed Emycin, Maxair autohaler, and Tessalon for "atypical pneumonia [or] perhaps bronchospasm." R. 341.[5]

On September 18, 2000, Plaintiff was examined by Michael A. Santer, M.D., to follow-up with Plaintiff nine months after an angioplasty and stent deployment procedure. R. 259. Dr. Santer found that, after a stress test, Plaintiff's "target heart rate [was] achieved," there was no evidence of chest pain, "[n]o evidence of ischemia or previous myocardial infarction, "and a "[n]ormal left ventricular systolic function with an ejection fraction of 62%." R. 260.[6]

On March 9, 2001, Plaintiff underwent an ultrasound of the pelvis. R. 346. From the

---

[5] The medical report from January 10, 2000, reports Plaintiff smokes two and a half cigarettes a day. R. 341. The medical report from January 6, 2000, reports Plaintiff "has discontinued tobacco smoking." R. 369. Subsequent medial reports state Plaintiff is still smoking two packs per day.

[6] An ejection fraction is a test that determines how well a heart pumps with each beat. A measurement between 55-70% is considered normal. *Ejection Fraction*, CLEVELAND CLINIC, http://my.clevelandclinic.org/services/heart/disorders/hfwhatis/ejectionfraction (last visited September 30, 2014).

ultrasound, W. Michael Menaley, M.D., concluded Plaintiff had a "mild-moderate uterine enlargement with multiple fibroids." *Id.* Subsequently on March 26, 2001, Plaintiff was diagnosed with dysfunctional uterine bleeding and fibromyomata uteri by Rodney Williams, M.D. R. 263.

On May 26,2001, Plaintiff was seen by Michael K. Brockett, M.D., after complaining of cough and chest congestion. R. 344. During this appointment, Plaintiff admitting to smoking two packs of cigarettes a day, but "is ready to quit." *Id.* Dr. Brockett diagnosed Plaintiff with bronchitis with bronchospasm and nicotine dependence. *Id.*

On November 14, 2001, Plaintiff underwent an EGD with a biopsy. R. 264 The postoperative diagnosis by Anil Singh, M.D., concluded Plaintiff had "[m]ild gastritis" but an "[o]therwise normal endoscopy." *Id.*

On January 30, 2002, Plaintiff was seen by Nik M. Shah, M.D., concerning her iron deficiency anemia. R. 265. During this appointment, Plaintiff denied "any pertinent anemia related symptoms" and displayed "improvement in her hemoglobin and hematocrit." *Id.*

On May 13, 2002, Plaintiff was examined following complaints of sinus infection and possible respiratory illness and tonsillitis. R. 335. The unsigned medical report noted Plaintiff had a "tight-sounding cough." *Id.* Plaintiff was diagnosed with bronchopneumonia and bronchospasms. *Id.*

On November 3, 2002, Plaintiff was treated by Ghazala A. Kazi, M.D., stemming from complaints of cold like symptoms, shortness of breath, and wheezing. R. 322. Dr. Kazi concluded Plaintif had asthmatic bronchitis. *Id.* Dr. Kazi prescribed Levaquin and Phenergan

4

with Codeine. *Id.* Dr. Kazi also advised Plaintiff to use her Albuterol inhaler and to quit smoking. *Id.*

After a x-ray conducted on December 18, 2002, radiologist Kenneth T. Miller, M.D., noted that Plaintiff's "lungs are well expanded and show no active infiltrative changes of inflammatory disease. The costophrenic angles and diaphragas are entirely clear. The heart size and mediastinal conttents appear normal. Visualized bone structures appear essentially normal." R. 375.

On February 25, 2003, Plaintiff was examined after complaints of coughing and head pressure. R. 330. An examination revealed the Plaintiff's ears and throat were clear, but there was "[t]enderness over the sinuses [and] [w]orse of the maxillary sinus." However Plaintiff had "no rales or rhonchi" on the lungs. *Id.* Plaintiff's CT chest exam performed on March 4, 2003, produced "[n]o significant abnormality . . . ." R. 47

Results from a pulmonary function test revealed that Plaintiff had "an obstructive ventilatory defect" which "may indicate an associated restrictive defect." R. 358. The report concludes that the "severity of the defect is severe." *Id.*

Plaintiff was again diagnosed with bronchospasm on April 16, 2003, and May 21, 2003. R. 328-29. Plaintiff was also again diagnosed with bronchitis on May 21, 2003, July 2, 2003, and October 24, 2003, and later diagnosed with acute bronchitis. R. 324-28. On February 19, 2004, Plaintiff underwent a posteroanterior and lateral chest x-ray. R. 384. Paul Prachun, M.D., reported that the x-ray revealed "unremarkable" results concerning the Plaintiff's heart, pulmonary vasculature, and lung fields. *Id.* Additionally, Dr. Prachun reported Plaintiff's "heart is of normal size and contour." *Id.*

On March 22, 2004, Plaintiff was examined by Eric Hunkele, M.D., complaining of "shortness of breath and deep cough with production of green phlegm." R. 322. Dr. Hunkele noted Plaintiff had "decreased breathing sounds throughout with some scattered wheezing," and diagnosed Plaintiff with pneumonia. *Id.* During ths examination, Plaintiff again reported smoking two packs of cigarettes a day. *Id.*

**D. Testimonial Evidence**

Plaintiff testified that she was born on February 20, 1955, and was fifty-seven years old at the time of the ALJ hearing. R. 37. She testified that she is married and her husband drove her to the hearing because she panics driving in heavy traffic or traffic that she is "not used to driving in." R. 38. Plaintiff testified she lives in Saint Marys, West Virginia. R. 39.

After high school she worked at the Colin Anderson Center as an aide and "took care of individuals that had mental and physical disabilities." *Id.* Plaintiff testified she worked in this capacity for nearly eighteen years, primarily at the midnight shift because she "didn't have to be around as many people . . . ." *Id.* When she worked around many people, Plaintiff testified that she would panic and have anxiety. *Id.* Plaintiff testified that she had a nervous breakdown around 2006 and left her position at the hospital. R. 41. A year later, she began to work at Wal-Mart in Marietta, Ohio. *Id.* Plaintiff testified that she was originally tasked with running a cash register, but requested another position where she would interact with fewer people. *Id.* She was then assigned the midnight shift stocking merchandise. *Id.* Plaintiff testified that in order to stock merchandise she would have to climb up and down large ladders, but she was physically unable to climb. R. 42. She worked at Wal-Mart for only two weeks. *Id.* Afterwards, Plaintiff began working at Saint Marys Correctional Facility as an office assistant but quickly left because she

"mentally couldn't handle working in the prison environment, around the prisoners and all the people . . . ." *Id.*

Between 2001 and 2004, Plaintiff testified that she continually suffered lung infections. *Id.* Plaintiff testified that she visited a doctor nearly every two months and received various medications, including antibiotics, steroids, and inhalers. R. 43. Between 2001 and 2004, Plaintiff testified that she was on medication for her breathing "[m]ost of the time." *Id.*

Plaintiff testified that she did not apply for disability until recently because her "husband was working and [she] didn't want to have to go through this process . . . [and] if [she] got better, [she] would go back to work." R. 46.

Plaintiff testified that she was having stomach and bowel problems while working at the Colin Anderson Center. *Id.* Plaintiff testified that she had gallbladder surgery in 1989. *Id.* Between 2001 and 2004, Plaintiff testified that she had bowel issues immediately after eating. *Id.* Plaintiff testified that prescribed medication gave her flu-like symptoms. *Id.*

Plaintiff testified that between 2001 and 2004, she had fibroid tumors which caused abdominal and vaginal pain. R. 50. She testified that a uterine biopsy was conducted and "that was it." R. 51. From a scale of one to ten, Plaintiff described the pain as a "nagging six" that continued for days. R. 52. Plaintiff testified that, on average, she was in pain for half of each month. *Id.*

The ALJ also heard testimony from Patricia Posey, a Vocational Expert ("VE"). The VE testified that Plaintiff's position as a nurse assistant at Colin Anderson Center was a heavy occupation. The VE stated she was aware that her opinion differed from the DOT list that considers a certified nurse's assistant as a medium occupation at the SVP 4 level. R. 56. Next,

the ALJ asked the VE to consider the following hypothetical:

> And what I'd like you to do is consider an individual of the claimant's age, education, and work history who could perform work at all exertional levels, but would need to avoid concentrated exposure to extreme cold, extreme heat, wetness, sensitivity to fumes, odors, gas, and poor ventilation. Could such an individual do the claimant's past work?

*Id.* The VE testified that the individual in the hypothetical could not do Plaintiff's past work. *Id.* However, the VE testified that such an individual could perform other jobs in the national and local economy. *Id.* The VE testified that Plaintiff could work as a food service worker in a hospital setting (DOT Code: 319.677-014), a shelving clerk in a library (DOT Code: 249.687-014), and an order caller (DOT Code: 209.667-014). The VE testified that the order caller and shelving clerk positions are light work and the food service work is medium work. *Id.* Additionally, the VE testified that all the positions were unskilled at SVP level 2. *Id.*

Next, the ALJ presented another hypothetical. The ALJ asked

> If I were to add to that hypothetical that the individual could perform typical, routine, or repetitive tasks with no strict time or production requirements, with occasional decision making, occasional changes in the work setting, occasional interaction with supervisors – occasional interaction with supervisors, coworkers, and the public. Are there any jobs that the individual with these additional limitations could perform?

*Id.* The VE testified that, under this new hypothetical, the only position a person could work at that was previously addressed by the VE would be as a shelving clerk. R. 58. However, the VE testified that, under this new hypothetical, a person could work as a merchandise maker or price marker (DOT Code: 209.5870034). *Id.* The VE testified these positions are light and unskilled. *Id.* The VE also testified that a person under this hypothetical could work as a mail clerk or mail

8

sorter (DOT Code: 209.686-026). *Id.*

During the examination of the VE by Plaintiff's attorney, the VE testified that, in combination with the previous two hypotheticals, she could not list a job in the national economy if a person was off task one-third of the time due to anxiety or was absent two or more times a month due to difficulties breathing. *Id.*; R. 59.

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 31, 1998, through the date last insured of March 31, 2004. R. 19. At step two, the ALJ found that through the date last insured, the Plaintiff had the following severe impairment: chronic obstructive pulmonary disease ("COPD"). R. 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21. After reviewing the record, the ALJ found that, through the date last insured, the Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at the medium exertional level but with the following nonexertional limitations: she should avoid concentrate exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, gases, dust, and poor ventilation. *Id.* At the fourth step, the ALJ found that through the date last insured, the Plaintiff was unable to perform any past relevant work. R. 24. Finally, at the last step, the ALJ found that through the date last insured and considering the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy

that the Plaintiff could have performed. *Id.*

## IV. THE MOTIONS FOR SUMMARY JUDGEMENT

### A. Contentions of the Parties

In Plaintiff's Motion for Summary Judgement, Plaintiff makes two arguments to contend that the ALJ did not use substantial evidence in determining that Plaintiff was not disabled. First, Plaintiff argues that the ALJ failed to properly evaluate Ms. Wolfe's credibility, particularly with regard to her complaints of pain associated with several of the medical conditions which the ALJ found to be non-severe. Second, Plaintiff argues the ALJ erred in failing to include limitations attributable to the impairments he found to be non-severe in the RFC. In Defendant's Motion for Summary Judgement, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's complaints were not fully credible and the ALJ's RFC finding included all of Plaintiff's credible functional limitation prior to the expiration of her insured status.

### B. The Standards

*1. Summary Judgment*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a

party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

*2. Judicial Review*

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

*3. Claimant's Credibility*

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976). "We will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

**C. Discussion**

*1. ALJ's Credibility Analysis*

Here, Plaintiff contends that remand is appropriate because the ALJ's decision in this case neither "contain[ed] specific reasons for the finding on credibility, supported by the evidence in the case record, nor "sufficiently specifi[ed] to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [Plaintiff's] statements and the reasons for the weight," citing SSR 96-7. SSR 96-7p, 1996 WL 374186 (July 2, 1996).

A two-part test is used for evaluating the limiting effects of subjective symptoms. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. 404.1529. First, objective medical evidence must show the existence of a medical determinable impairment "'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig,* 76 F.3d at 594 (quoting 20 C.F.R. 404.1529(b)). In other words, "no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p. Second, after the claimant has met this threshold obligation of showing an impairment reasonably likely to cause the pain claimed, the adjudicator must evaluate the intensity, persistence, and limiting effects of the claimant's pain and other symptoms in order to determine the extent to which they affect her ability to work. *Craig*, 76 F. 3d at 595; 20 C.F.R. 404.1529(c)(1); SSR 96-7p. In making this evaluation, the ALJ must consider all of the available evidence, including "the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of

pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, at 595 (internal citations omitted).

While objective medical evidence of pain "is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work," 20 C.F.R. 404.1529(c)(2), in many cases, symptoms, such as pain, "suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p; *see also Craig*, 76 F. 3d at 595 ("[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected *solely* because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.") (emphasis in original). SSR 96-7p requires that

> If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.

*Id*.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness,

> and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c). Accompanying factors that the adjudicator must also consider when assessing the credibility of an individual's statements are provided in SSR 96-7p. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

Contrary to Plaintiff's contention, the record illustrates that the ALJ evaluated Plaintiff's symptoms in accordance with the two-part test in *Craig* and the factors outlined in 20 C.F.R. 404.1529 and SSR 96-7p. In step one of the *Craig* test, the ALJ found that Plaintff has "medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms . . . ." R. 22. The ALJ addresses, at length, Plaintiff's testimony during the ALJ hearing, noting Plaintiff's many alleged symptoms including her anxiety, breathing difficulties, bowel irregularities, and abdominal pain. R. 22.

Next, in accordance with the factors set out in 20 C.F.R. 404.1529 and SSR 96-7p, the ALJ considered whether Plaintiff's subjective statements regarding her symptoms were substantiated by, or conflicted with, the objective evidence in the record, and found that the

Plaintiff's "statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible." R. 22. The ALJ found that the Plaintiff "provided inconsistent information regarding daily activities" from her RFC created in 2011 compared to the testimony provided during the ALJ hearing. *Id.* The ALJ noted that in the RFC, Plaintiff reported her daily activities as watching television, paying bills, washing dishes, cooking, laundry, taking out trash, shopping, talking to friends, driving, taking pictures, and visiting grandchildren. *Id.* However, during the ALJ hearing, Plaintiff testified that her daily activities included sitting around, doing limited chores, and infrequently socializing. *Id.* In Plaintiff's motion, Plaintiff contends that the ALJ unfairly compared an unsworn statement that addressed Plaintiff's daily activities in March 2011 to sworn testimony addressing her daily activities during the time under review. First, it is required that the ALJ "consider the entire case record" in determining a credibility determination. SSR 96-7p. Thus, the ALJ may consider sworn and unsworn statements when making a credibility determination. Additionally, in reviewing the record, Plaintiff and Plaintiff's counsel make clear that Plaintiff still suffers from the same conditions and symptoms experience during the relevant period. Therefore, a discrepancy in testimony and a negative conclusion of Plaintiff's credibility could be supported by a "reasonable mind." *Pierce*, 487 U.S. at 665. Furthermore, the ALJ thoroughly detailed Plaintiff's medical history, noting several examples where Plaintiff discussed symptoms that received little treatment or no treatment. R. 20.

Because the Plaintiff did not show that the ALJ's credibility determination was "patently wrong" and the ALJ's determination was "sufficiently specific," the ALJ's decision here is supported by substantial evidence. *Powers,* 207 F.3d at 435; SSR 96-7P. Therefore, this Court finds that the ALJ correctly followed the *Craig* test in evaluating Plaintiff's subjective

symptoms. Additionally, the Court finds that more than substantial evidence exists to support the ALJ's decision to discredit Plaintiff's subjective complaints.

*2. Non-Severe Impairments in RFC*

Lastly, Plaintiff contends that the omission of Plaintiff's non-exertional limitations created by the impairments the ALJ found to be non-severe in the RFC resulted in a flawed hypothetical question posed to the VE.

"[F]or a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments. *Young v. Astrue*, 771 F. Supp. 2d 610, 623 (S.D.W. Va. 2011). Further, "it is difficult to see how a vocational expert can be of any assistance if [s]he is not familiar with the particular claimant's impairments and abilities . . . ." *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989). However, "[w]hile questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record. Finally, the hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe." *Young*, 771 F. at 623 (internal citations omitted).

Here, the ALJ only found Plaintiff's COPD to be severe. R. 19. The ALJ covered Plaintiff's COPD in the hypothetical given to the VE when the ALJ asked the VE to "consider an individual of the claimant's age, education, and work history who could perform work at all exertional levels, but would need to avoid concentrated exposure to extreme cold, extreme heat, wetness, sensitivity to fumes, odors, gas, and poor ventilation." R. 56. Thus, because the ALJ's hypothetical included severe impairments, determined by the ALJ's entire review of the record, the VE's testimony is therefore proper and the ALJ's finding is supported by substantial

evidence.

## IV. RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1. Ms. Wolfe's Motion for Summary Judgment be **DENIED**.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: October 7, 2014               /s/ *James E. Seibert*
                                     JAMES E. SEIBERT
                                     UNITED STATES MAGISTRATE JUDGE