IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**CAROL JEAN WOLFE,**

    Plaintiff,

v.                                                                                                 **CIVIL ACTION NO.: 3:14-CV-4**
                                                                                                     **(JUDGE GROH)**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge James E. Seibert. By Standing Order, this action was referred to Magistrate Judge Seibert for submission of a proposed R&R. Magistrate Judge Seibert filed his R&R [ECF 16] on October 7, 2014. In the R&R, Magistrate Judge Seibert recommends that the Court deny Plaintiff Carol Jean Wolfe's Motion for Summary Judgment and grant the Commissioner of Social Security's Motion for Summary Judgment because substantial evidence supported the Administrative Law Judge's ("ALJ") denial of the Plaintiff's application for disability insurance benefits.

### I. Background

On February 23, 2011, Carol Jean Wolfe applied for disability insurance benefits, alleging that she had a disability beginning on March 31, 1998. Wolfe's application was

1

denied initially and on reconsideration. Wolfe then requested a hearing before an ALJ. On August 15, 2012, the ALJ held a hearing. The ALJ issued a decision denying Wolfe benefits on August 17, 2012, finding that Wolfe was not disabled from March 31, 1998 through March 31, 2004, the date last insured. The Appeals Council denied Wolfe's request for review on November 13, 2013, thereby rendering the ALJ's decision the final decision of the Commissioner.

On January 8, 2014, Wolfe filed this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying her claim for disability insurance benefits. After submitting the administrative record, both parties moved for summary judgment. Wolfe requests summary judgment on two grounds. First, she contends that the ALJ did not properly evaluate her credibility. Second, she avers that the ALJ erred by omitting limitations stemming from her non-severe impairments in the residual functional capacity ("RFC") assessment at step four of the evaluation process. The Commissioner counters that substantial evidence supports the ALJ's decision.

On October 7, 2014, Magistrate Judge Seibert issued his R&R recommending that the Court grant the Commissioner's Motion for Summary Judgment and deny Wolfe's Motion for Summary Judgment. Wolfe timely objected to the R&R, and the Commissioner responded to her objections.

## II. Standards of Review

### A. Review of the R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must review *de novo* those portions of the magistrate judge's findings to which Wolfe objects. However, failure to file objections permits the district court to review the R&R under the standards that the district court

2

believes are appropriate, and, if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Therefore, this Court will review *de novo* those portions of the R&R to which Wolfe objects and the remaining portions of the R&R for clear error.

### B. Review of the ALJ's Decision

The Social Security Act limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation and quotation marks omitted).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations.").

## III. The ALJ's Evaluation Process

To determine whether a claimant is disabled, the ALJ conducts a five-step evaluation process. 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that the claimant is disabled or not disabled at a step, the analysis ends. Id. The steps are:

Step One: Determine whether the claimant is engaging in substantial gainful

activity;

Step Two: Determine whether the claimant has a severe impairment;

Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;

Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and

Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2012 WL 667296, at *3 (N.D.W. Va. Feb. 28, 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

Here, at step one, the ALJ concluded that Wolfe "did not engage in substantial gainful activity" from the alleged onset date through the date last insured. R. at 19. For step two, the ALJ determined that Wolfe had one severe impairment: chronic obstructive pulmonary disease ("COPD"). R. at 19-21.

At step three, the ALJ found Wolfe "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." R. at 21. Then, the ALJ concluded that Wolfe had the following RFC:

After careful consideration of the entire record, I find that, through the date last insured, the claimant had the [RFC] to perform a full range of work at the medium exertional level but with the following nonexertional limitations: she should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, gases, dust, and poor ventilation.

Id.

At step four, the ALJ determined that Wolfe could not perform past relevant work. R. at 24. Next, the ALJ found no disability at step five, stating that, "considering [Wolfe's]

4

age, education, work experience and [RFC], there were jobs that existed in significant numbers in the national economy that [Wolfe] could have performed." Id. The ALJ explained that he based this finding on the testimony of a vocational expert ("VE"). R. at 25. In doing so, the ALJ summarized a hypothetical he asked the VE and the VE's response:

> I asked the [VE] whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would have been able to perform the requirements of representative occupations at the medium exertional level such as food service worker (hospital) . . . ; and of representative occupations at the light exertional level such as shelving clerk (library) . . . ; and order caller . . . .

Id.

## IV. Discussion

Magistrate Judge Seibert recommends granting the Commissioner's Motion for Summary Judgment. Specifically, his R&R recommends finding that (1) the ALJ properly assessed Wolfe's credibility; and (2) substantial evidence supported the RFC. Wolfe objects to both recommended findings.

### A.   The ALJ Properly Evaluated Wolfe's Credibility.

The ALJ found that Wolfe's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." R. at 22. Wolfe contends that the ALJ did not support this conclusion with sufficient reasons. She particularly argues that the ALJ did not consider the factors pertinent to assessing her credibility that are outlined in Social Security Ruling 96-7p. The Commissioner responds that the ALJ considered those factors when discussing Wolfe's testimony and properly discredited her testimony based on inconsistent reports Wolfe made regarding her daily activities.

The Fourth Circuit adopted a two-step process for evaluating a claimant's symptoms in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). First, the ALJ must determine if the claimant's medically documented impairments could reasonably be expected to cause the alleged symptoms. Craig, 76 F.3d at 589. Second, the ALJ must evaluate the subjective evidence, considering the claimant's statements about "the intensity and persistence of the . . . pain, and the extent to which it affects [plaintiff's] ability to work." Craig, 76 F.3d at 595. The ALJ discredited Wolfe's testimony at this step.

In assessing a claimant's credibility, "[i]t is not sufficient for the [ALJ] to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96-7p. The ALJ must also do more than "recite the factors that are described in the regulations for evaluating symptoms." Id. Rather, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

Moreover, the ALJ analyzes the second step "using statements from treating and nontreating sources and from the claimant." Felton-Miller v. Astrue, 459 F. App'x 226, 229 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1529(a), 416.929(a) (2011)). The ALJ also considers additional "[f]actors in evaluating the claimant's statements including consistency in the claimant's statements, medical evidence, medical treatment history, and the [ALJ's] observations of the claimant." Id.

Finally, Social Security Ruling 96-7p provides that the ALJ must consider the following seven factors "in addition to the objective medical evidence when assessing the

credibility of" a claimant's statements:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

In this case, the ALJ complied with Social Security Ruling 96-7p as his decision demonstrates that he considered these factors when considering Wolfe's testimony. There is no requirement that he state specific findings as to each factor. Epperson v. Astrue, Civil Action No. 2:11-CV-12-D, 2012 WL 3862717, at *4 (E.D.N.C. Sept. 5, 2012).

The ALJ covered the first factor, Wolfe's daily activities. He noted that Wolfe stated her daily activities from 2001 through 2004 "included going to the bathroom, sitting around, and doing very small household chores" and reviewed Wolfe's report of her daily activities in a function report dated March 3, 2011. R. at 22.

The same is true for the second factor, "[t]he location, duration, frequency, and intensity of [Wolfe's] pain or other symptoms." SSR 96-7p. The ALJ reviewed Wolfe's testimony concerning panic attacks and anxiety. For example, he noted Wolfe testified that "[s]he tried to work at Saint Mary's Correctional Facility as an office assistant, but had panic

7

attacks" and "her anxiety was 'bad;' she cried every day." R. at 22. The ALJ also stated Wolfe testified that she had "repeated lung infections, occurring every two months or more often;" "experienced diarrhea associated with her 'nerves'" and "reported having five bowel movements within five minutes of eating a meal;" and "had fibroid tumors, which caused constant abdominal and vaginal pain." Id. Finally, the ALJ noted Wolfe "had bleeding more than 20 days a month" and "reported 'nagging pain' occurring at least 15 or 20 days a month." Id.

The ALJ also covered the third consideration, "[f]actors that precipitate and aggravate the symptoms." SSR 96-7p. He noted, for example, that Wolfe "stated she would panic when working around others." R. at 22.

Next, the ALJ addressed the fourth factor, "[t]he type, dosage, effectiveness, and side effects of any medication [Wolfe] takes or has taken to alleviate pain or other symptoms." SSR 96-7p. The ALJ stated Wolfe testified that "[s]he was prescribed numerous medications, such as steroids, inhalers, and antibiotics, to treat" her "repeated lung infections" but "continued to experience breathing difficulties." R. at 22. He further noted that Wolfe "indicated she has taken a number of different medications for 'nerves' that had side effects." Id. Specifically, the ALJ reviewed Wolfe's testimony that "she was taking Prednisone and antibiotics that caused nausea and stomach cramps." Id.

As for the fifth factor, "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms," SSR 96-7p, the ALJ noted Wolfe "received no treatment for anxiety because of shyness." R. at 22. Such treatment, to a reasonable person, would include therapy, an alternative to medication. The decision therefore reflects that the ALJ considered this factor.

The ALJ also covered the sixth factor, "[a]ny measures other than treatment [Wolfe] uses or has used to relieve pain or other symptoms." SSR 96-7p. The ALJ reviewed Wolfe's testimony "that, for the period 2001 through 2004, she would have been unable to drive to the hearing because of panic" and "[s]he is able to drive locally, but has difficulty in unfamiliar areas." R. at 22. This testimony reflects measures Wolfe took to cope with her averred anxiety.

Finally, the ALJ addressed the seventh consideration, "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p. The ALJ noted Wolfe testified that "she has no friends" and her "anxiety interfered with her relationship with her husband." R. at 22. Thus, the ALJ considered all of the factors enumerated in Social Security Ruling 96-7p. The fact that Wolfe does not point to any evidence that the ALJ should have considered in assessing these factors reinforces this conclusion.

Having found that the ALJ complied with Social Security Ruling 96-7p, substantial evidence supports the ALJ's assessment of Wolfe's credibility. The ALJ discredited Wolfe's testimony based on inconsistent statements Wolfe made concerning her daily activities. The ALJ stated that, on the function report dated March 3, 2011, Wolfe:

> reported that her daily activities include watching television, paying bills, washing dishes, cooking, doing small loads of laundry, picking up trash, shopping for groceries two times a week for one hour, taking care of personal hygiene, doing light housework, emailing friends, talking on the telephone, driving a car, riding in a car, taking pictures three times a month, and visiting her grandchildren two times a month.

R. at 22. The ALJ then explained that "Wolfe testified that her daily activities include going to the bathroom, sitting around, and doing very small household chores." Id. Comparing

9

the report to Wolfe's testimony, the ALJ determined that Wolfe "provided inconsistent information regarding daily activities." Id. A reasonable mind could discredit Wolfe's testimony in light of her earlier statements because the report details a wide range of daily activities while Wolfe testified to a far more limited range of daily activities.

Accordingly, the Court overrules this objection because the ALJ complied with Craig and Social Security Ruling 96-7p and substantial evidence supports his credibility determination.

### B. Substantial Evidence Supports the ALJ's Residual Capacity Finding.

Next, Wolfe argues that the ALJ erred because he did not consider her non-severe impairments after step two. Specifically, she alleges that the ALJ omitted the following non-severe impairments after step two: artherosclerotic heart disease, uterine fibroid cysts, anxiety, chronic bronchitis/upper respiratory infection, and chronic diarrhea.[1] She contends that this omission resulted in an erroneous RFC finding and, by extension, an incomplete VE hypothetical and flawed VE testimony.

A claimed condition must meet certain criteria to constitute an impairment. An impairment must last "for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. It also "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. This requires that an impairment "be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." Id.

---

[1] Wolfe does not dispute the ALJ's finding that COPD was her only severe impairment.

When a claimant has multiple impairments, the ALJ "must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). This requires that the ALJ "adequately explain his or her evaluation of the combined effects of the impairments." Id. In making a disability determination, the ALJ must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity" and, if the ALJ finds "a medically severe combination of impairments," the ALJ must consider "the combined impact of the impairments . . . throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

Thus, in assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p. Although a non-severe impairment "standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." Id.

Here, the ALJ properly addressed Wolfe's claims of artherosclerotic heart disease, uterine fibroid cysts, anxiety, chronic bronchitis/upper respiratory infection, and chronic diarrhea in his RFC assessment.

As to Wolfe's artherosclerotic heart disease and uterine fibroid cysts, the ALJ found at step two that these impairments was "more chronic in nature, but . . . well controlled or produced no significant symptoms." R. at 20. Then, the ALJ considered them in his RFC analysis. He found that Wolfe's heart problems, including her artherosclerotic heart disease, and gynecological problems, including her fibroids, "did not persist for at least 12 consecutive months." R. at 23. Because these impairments did not persist "for a

11

continuous period of at least 12 months," the ALJ did not need to include them in the RFC. 20 C.F.R. § 404.1509. Substantial evidence therefore supports his decision to omit them from the RFC.

The ALJ also properly considered Wolfe's averred anxiety. At step two, the ALJ determined that anxiety was not a "medically determinable impairment, explaining that "[t]he medical evidence of record shows no diagnosis or treatment for a mental impairment during the relevant period." Id. Contrary to Wolfe's objection, the ALJ considered Wolfe's averred anxiety again in his RFC assessment. The ALJ noted Wolfe's testimony concerning anxiety. R. at 22. He then considered opinion evidence offered by two state agency psychologists, Drs. Comer and Harlow, who both found insufficient evidence that Wolfe had a mental impairment. R. at 23; see also R. at 389-404, 407-08. Citing this evidence, the ALJ determined, like he did at step two, that "the evidence of record shows no medically determinable impairment." R. at 23. While the ALJ did not specifically state that he was addressing Wolfe's anxiety, the fact that this finding relies on the psychologists' reports demonstrates that he did so. Id. Thus, substantial evidence supports the ALJ's decision to consider Wolfe's claimed anxiety but omit it from the RFC because there was no medical evidence supporting it, which is required to find an impairment. See 20 C.F.R. § 404.1508. Indeed, Wolfe does not argue there was such evidence in the record.

The ALJ also properly considered Wolfe's chronic bronchitis/upper respiratory infections. At step two, the ALJ found this impairment non-severe, explaining it was an "acute ailment[] that did not affect her for at least 12 consecutive months" and "resolved promptly with either no treatment or after brief treatments including medication, hospitalizations, x-rays, and over-the-counter remedies." R. at 20. The ALJ then

12

considered Wolfe's lung infections in the RFC assessment. Specifically, he noted Wolfe testified that "she had repeated lung infections, occurring every two months or more often." R. at 22. The ALJ, however, had already found that the medical evidence showed this condition did not last at least 12 consecutive months. It therefore was reasonable and consistent with the law for the ALJ to consider Wolfe's chronic bronchitis/upper respiratory infections in reviewing her testimony but to omit it from the RFC because it did not meet the temporal requirement of an impairment. See 20 C.F.R. § 404.1509.

Finally, the ALJ addressed Wolfe's claims of chronic diarrhea in the RFC assessment. Specifically, he noted that "Wolfe testified she had stomach, bowel, gallbladder, and ulcer problems. She experienced diarrhea associated with her 'nerves.' She reported having five bowel movements within five minutes of eating a meal." R. at 22. Wolfe does not point to any medical evidence supporting her claim of chronic diarrhea. Like with Wolfe's claimed anxiety, such evidence is needed for chronic diarrhea to constitute an impairment. See 20 C.F.R. § 404.1508. Thus, given the significant deference afforded to the ALJ's finding concerning Wolfe's credibility and the lack of medical evidence supporting this condition, the Court finds that substantial evidence supported the ALJ's decision to omit Wolfe's claim of chronic diarrhea from his RFC.

In sum, the ALJ considered Wolfe's claims of artherosclerotic heart disease, uterine fibroid cysts, anxiety, chronic bronchitis/upper respiratory infection, and chronic diarrhea after step two and substantial evidence supports their omission from the RFC. Moreover, the ALJ was not required to include Wolfe's non-severe impairments in his hypothetical to the VE. Young v. Astrue, 771 F. Supp. 2d 610, 623 (S.D.W. Va. 2011) ("[T]he hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to

be severe."). It therefore was proper for the ALJ to include only Wolfe's severe impairment, COPD, in the VE hypothetical and to rely on the VE's testimony. Accordingly, the Court overrules this objection because the ALJ complied with Craig and Social Security Ruling 96-7p and substantial evidence supports his RFC finding, the VE hypothetical, and, by extension, the finding of no disability at step five that was based on the RFC and the VE's testimony.

### IV. Conclusion

Upon review of the above, the Court **OVERRULES** the Plaintiff's objections. It is the opinion of this Court that the Report and Recommendation should be, and is, hereby **ORDERED ADOPTED**. For the reasons more fully stated in the Report and Recommendation, this Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment. Accordingly, this Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be **STRICKEN FROM THE DOCKET OF THIS COURT**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: January 28, 2015

GINA M. GROH
UNITED STATES DISTRICT JUDGE